# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Mark Filip | Sitting Judge if Other than Assigned Judge | Sidney I. Schenkier |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3527 | **DATE** | 1/7/2005 |
| **CASE TITLE** | Beard vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER. For the reasons set forth in the attached memorandum opinion and order, plaintiff's motion to compel (doc. # 49) is GRANTED, insofar as the Court rejects defendant's assertion that production of the records in issue is barred by certain federal and state statutes. The Court holds in abeyance the question of what particular records must be produced, pending a review process described more fully in the attached opinion. The matter is set for a status conference on 01/20/05 at 8:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | JAN 1 0 2005 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 58 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| mm | courtroom deputy's initials | 2005 JAN -7 PM 4:35 U.S. DISTRICT COURT | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| LISA M. BEARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 03 C 3527 |
| vs. | ) | |
| | ) | District Judge Filip |
| CITY OF CHICAGO, | ) | |
| | ) | Magistrate Judge Schenkier |
| Defendant. | ) | |



## MEMORANDUM OPINION AND ORDER

Plaintiff, an African-American female who suffers from major depression, was employed as a paramedic for the City of Chicago Fire Department (the "Department") from April 1, 1993 until her termination on November 14, 2002. Ms. Beard has filed this federal-question lawsuit asserting discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; race discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq.* and 42 U.S.C. § 1981; gender discrimination in violation of Title VII; and race, color and gender discrimination in violation of 42 U.S.C. § 1983.

As part of discovery in this case, plaintiff has sought production of documents related to "lay ups" (that is, leaves of absences) taken by other paramedics employed by the Department for psychological or substance abuse issues, on the ground that these other paramedics are similarly situated to plaintiff and that evidence of their treatment by the Department is discoverable on the issue of plaintiff's discrimination claims. The parties agree that the presiding district judge has found these records "relevant" as defined by Federal Rule of Civil Procedure 26(b)(1). However, defendant has resisted production of the documents on grounds of privilege. As a result, plaintiff

has filed a motion to compel (doc. # 49), which has been referred by the district judge to this Court for ruling (doc. # 48).[1]

Defendant resists production on the grounds that medical records concerning other paramedics are privileged from production by virtue of three separate statutory schemes: the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320d, *et seq.*; the federal Public Health Service Act ("the Public Health Act"), 42 U.S.C. § 290dd-2; and the Illinois Mental Health and Developmental Disabilities Confidentiality Act ("the Illinois Confidentiality Act"), 740 ILCS 110-1, *et seq.* For the reasons that follow, the Court finds that none of these statutory schemes bars production of the documents in issue. However, we find that a privilege that neither side has addressed – the federal psychotherapist-patient privilege – may apply to some of the documents at issue.

## I.

All of the documents at issue presently appear to be in the possession of the Department. But, they originally were generated in different ways.

*First*, the Department maintains medical records prepared by outside medical personnel. Some of the records are generated by an employee's treating physician, or other outside treating medical personnel, as part of the ordinary course of an employee's treatment. Other records are generated by the treating physicians at the request of the Department, for the purpose of documenting an employee's progress, and are provided to the Department directly by the employee. According

---

[1] In oral argument on the motion, the parties disagreed as to whether the district judge also has ruled that this discovery (if not protected by privilege) should not be limited by any of the considerations set forth in Federal Rule of Civil Procedure Evidence 26(b)(2). That dispute is beyond the scope of the referral, and we do not address it in this opinion. In any event, for the reasons we explain below (*see* note 3, *infra*), we do not believe that a Rule(b)(2) analysis ultimately will affect the production of the documents in issue.

to the parties' representations during argument, these records are obtained by the Department in at least two different ways. In some instances, they are obtained directly from the physician pursuant to a consent form signed by the employee. At least one version of the consent form (*see* Def. Mem., Ex. 4) specifies what information the physician is authorized to provide; specifies the use that may be made of the information ("[e]valuation for return to work; maintaining treatment and follow-up care, and any other matter related to my employment with the Chicago Fire Department, . . ."); and further specifies that the Department may not re-disclose the information without the employee's specific consent. In other instances, the records may be obtained directly from the employee (who presumably requested them from the physician), without any consent form being signed and without any express, written limitation on the use of the information.

*Second*, the Department may obtain medical records from physicians specifically designed to assess an employee's fitness to return to work. The doctors who perform these evaluations are not treating physicians, but are outside doctors whom the Department contracts to perform this service. An employee who is sent for this evaluation completes a Fitness for Duty Evaluation Consent Form (Pl. Mem., Ex. 5). In this form, the employee acknowledges that there is no "therapist-client relationship" with the evaluating doctor, and that the information provided to the evaluating doctor is not confidential.

*Third*, the Department maintains its own medical section, which employs physicians and other medical personnel. The medical section is a subset of the Department's personnel division, and the employees of the medical section do not render medical or mental health treatment to employees. Rather, the function of the medical section is to determine whether an employee is fit to return to duty. The records created by this section include initial lay up interview forms and

summaries of medical reports forms, which are prepared by nurses of the medical section, and medical progress notes, which are prepared by physicians employed by the medical section.

*Fourth*, the medical section maintains various administrative or clerical records concerning the employee's status. These include appointment sheets and medical action reports.

During argument, the parties disclosed that the withheld documents have been identified on a privileged document log. That log discloses the employees to whom the documents relate, and – at least in general terms – whether each employee's medical records relate to substance abuse or mental health treatment. By informal agreement, the parties have treated the log on an "attorneys' eyes only" basis, with neither the log nor the information on it being disclosed to the plaintiff, herself.

## II.

With that brief overview, we now turn to an analysis of whether the statutory provisions upon which the defendant relies authorizes the defendant to withhold these records from production. For the reasons set forth below, we conclude that they do not.

### A.

We begin by considering whether the documents at issue are protected from production under HIPAA. We find that the documents are not protected from disclosure for several reasons.

*First*, HIPAA provides that standards concerning the handling of health information shall apply to "a health plan," "a healthcare clearinghouse," or "a healthcare provider who transmits any health information in an electronic form in connection with a transaction referred to in Section 1320d-2(a)(1) of this title." 42 U.S.C. § 1320d-1(a)(1)-(3). Section 1320d-2(a)(1), in turn, provides for standards to govern the electronic transfer of health information. We have been offered no

evidence that the Department meets the definition of a "health plan" or "healthcare clearinghouse." Moreover, it is questionable whether the defendant is a healthcare provider, which the implementing regulations define as a provider of medical services or "any other person or organization who furnishes, bills, or is paid for health care in the normal course of business." 45 C.F.R. § 160.103. It does not appear that the Department's medical section actually provides medical care; it evaluates medical conditions (and pays for fitness for return to duty evaluations) not for the purpose of treatment, but for the purpose of determining fitness to return to work. But, even if the defendant met the definition of a healthcare provider, there is no evidence in this case that the Department is engaged in the transmission of the health information in "electronic form," as required for the HIPAA standards to be applicable. If there were any doubt about that statutory requirement, it is eliminated by the implementing regulations. The regulations provide that a "covered entity" includes only those healthcare providers who "transmit[] any health information *in electronic form* in connection with a transaction covered by this subchapter," 45 C.F.R. § 160.103 (emphasis added), and that the restrictions on use or disclosure of health information apply only to a covered entity. *See* 45 C.F.R. § 164.502(a).

*Second*, even if the defendant qualified as a covered entity, the restrictions on use or disclosure apply only to "protected health information." And, under the regulations, the definition of protected health information excludes "individually identifiable health information in . . . [e]mployment records held by a covered entity *in its role as employer*." 45 C.F.R. § 160.103 (emphasis added). Plainly, the only reason that the Department maintains any records of an employee's substance abuse or mental health treatment in connection with a lay up is because of the Department's role as an employer.

5

*Third*, the regulations provide that a covered entity may disclose protected health information "in the course of any judicial or administrative proceeding." 45 C.F.R. § 164.512(e)(1); *see also* 45 C.F.R. § 164.502(a)(1)(vi). Section 164.512(e) allows disclosure of protected health information in response to a discovery request, even if unaccompanied by a court order, if reasonable efforts have been made to insure that individuals who are the subject of the protected health information requested are given notice of the request, or the covered entity receives satisfactory assurance that the requesting party has made reasonable efforts to secure a qualified protective order that provides that the parties (a) will not use or disclose the information for purposes other than the pending proceeding, and (b) will return the information (or destroy it) at the end of the litigation or proceeding. 45 C.F.R. § 164.512(e)(1)(ii), (v). Moreover, the regulations specifically authorize disclosure of the protected health information by a covered entity in response to a court order, so long as the entity discloses "only the protected health information expressly authorized by such order." 45 C.F.R. § 164.512(e)(1)(i).

For each of the foregoing independent reasons, we reject the defendant's argument that the production of the requested documents is barred under HIPAA.

**B.**

We now turn to defendant's argument that production of documents is barred under the Public Health Act. That Act states that patient records maintained in connection with substance abuse diagnosis, prognosis or treatment shall be treated as confidential, and may be disclosed only in limited circumstances, if the records are maintained in connection "with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any

department or agency of the United States..." 42 U.S.C. § 290dd-2. The Seventh Circuit has stated that the purpose of this statute is to protect not only the privacy rights of individual patients, but also "the continued effectiveness and viability of important substance abuse treatment programs," as "[p]atients will be less willing to seek treatment if patient confidentiality is not strictly protected." *U.S. ex rel Chandler v. Cook County, Illinois*, 277 F.3d 969, 981 (7th Cir. 2002).

That said, Section 290dd-2 does not create a privilege that covers any and all records of substance abuse treatment. Rather, the statute applies only to those records maintained in connection with the performance of any "program or activity" relating to substance abuse education, prevention, training, treatment, rehabilitation or research, and only if those programs or activities are "conducted, regulated or directly or indirectly assisted by any department or agency of the United States." 42 U.S.C. § 290dd-2(a). Certainly, in the attorney-client privilege context, a party asserting the privilege bears the burden of establishing all of its elements, *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983), and we see no reason why the rule should be different with respect to the privilege defendant asserts under the Public Health Act. Here, defendant has fallen short of establishing that the documents are protected under the Public Health Act for several reasons.

*First*, defendant has failed to establish that the documents at issue were maintained in connection with a "program or activity" within the meaning of Section 290dd-2. The regulations promulgated under Section 290dd-2 define a "program" as follows:

> (a) an individual or entity (other than a general medical care facility) who holds itself out as providing, and provides, alcohol or drug abuse diagnosis, treatment or referral for treatment; or
>
> (b) an identified unit within a general medical facility which holds itself out as providing, and provides, alcohol or drug abuse diagnosis, treatment or referral from treatment; or

7

> (c) medical personnel or other staff in a general medical care facility whose primary function is the provision of alcohol or drug abuse diagnosis, treatment or referral for treatment and who are identified as such providers.

42 C.F.R. § 2.11.

Some of the documents at issue here were provided directly by an employee's treating physician or other treating medical personnel to the Department, pursuant to a signed consent. Defendant has offered no evidence concerning the identity of these outside medical personnel, or that they fall within any of the regulatory definitions of "program." Likewise, the medical records obtained by the Department's medical section directly from the employee have not been shown to be maintained pursuant to a defined "program."

Nor is there any evidence that the Department's medical section, which generates some of the records at issue, falls within the definition of a covered program. The Department deals with an array of medical issues other than substance abuse, and thus does not appear to fall within the subpart (a) definition of an entity that holds itself out as providing substance abuse "diagnosis, treatment or referral for treatment."[2] Nor does the Department appear to fall within the subpart (b) definition of a program, because the Department is not an identified unit of a more general medical facility that holds itself out as providing treatment or referral for treatment for substance abuse. Finally, the Department does not appear to qualify as a program under the subpart (c) definition, because its "primary function" is not the provision of substance abuse diagnosis, treatment or referral, but is rather to determine fitness for return to duty.

---

[2] We note that the regulations elsewhere state that defined "programs" include "employee assistance programs." 42 C.F.R. § 2.12(e)(1). However, given the description we have received of the Department and how it works, it does not appear to fall within that definition.

8

*Second*, even if the records at issue were maintained pursuant to a defined "program," defendant has offered no evidence that such a program is "conducted, regulated or directly or indirectly assisted by any department or agency of the United States." 42 U.S.C. § 290dd-2(a). There is no evidence that any of the activities of the Department in connection with dealing with employees on lay-ups for substance abuse are conducted or regulated by the United States. Nor has defendant offered any evidence that those activities are directly or indirectly "supported by funds provided by any department or agency of the United States." 42 C.F.R. § 2.12(b)(3). Section 2.12(b)(3)(ii) provides that indirect financial assistance may be established by showing that the activity is "[c]onducted by a State or local government unit which, through general or special revenue sharing or other forms of assistance, receives Federal funds which could be (but are not necessarily) spent for the alcohol or drug abuse program." The regulations eliminate any doubt about the necessity of federal assistance in order to render Section 290dd-2 applicable. The regulations state that if a patient receives treatment provided by a program which is not "federally conducted, regulated or supported in a manner which constitutes Federal assistance under § 2.12(b), that patient's record is not covered by these regulations." 42 C.F.R. § 2.12(e)(2). Defendant has made no showing of such financial support here, and in the absence of evidence, we will not assume what the defendant has failed to prove. *See Ley v. Blose*, 698 N.E.2d 381, 383 and n.1 (Ind. Ct. App. 1998).

*Third*, the regulations make clear that where records are maintained in connection with a covered program that receives assistance by the United States, what may not be disclosed is limited to those records that "[w]ould identify a patient as an alcohol or drug abuser either directly, by reference to other publicly available information, or through verification of such an identification

9

by another person." *See also* 42 C.F.R. § 2.12(e)(3) ("[t]he restrictions on disclosure apply to any information which would identify a patient as an alcohol or drug abuser"). Thus, even if the restrictions on disclosure were applicable, they would apply only to those records pertaining to substance abuse diagnosis or treatment. It would not apply to records that pertain to mental health treatment unrelated to any substance abuse issues, which also was sought by plaintiff. Moreover, it strikes the Court that production could be made in a way that kept confidential the identity of individual employees who received lay ups for substance abuse treatment, by redacting from the records "patient identifying information," which the regulations define as "name, address, social security number, fingerprints, photograph, or similar information by which the identity of the patient can be determined with reasonable accuracy and speed either directly or by reference to other publicly available information." 42 C.F.R. § 2.11.

Accordingly, for all of these reasons, the Court finds that the Public Health Act does not bar production of the documents sought in this case.

### C.

We now turn to defendant's argument that state law bars production of the records sought by the plaintiff. In particular, defendant relies on the Illinois Confidentiality Act, 740 ILCS 110/3, which prohibits disclosure of mental health records and communications except as provided under the Act. *See McGreal v. Ostrov*, 368 F.3d 657, 688 (7th Cir. 2004).

However, the Illinois statute has no applicability in this federal-question case. Federal Rule of Evidence 501 provides that in a non-diversity case, "the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and

10

experience." The Seventh Circuit has held that under Rule 501, in a federal-question case, "the contours and exceptions of such privileges are clearly a matter of federal common law; state-created principles of privilege do not control." *In Re Pebsworth*, 705 F.2d 261, 262 (7th Cir. 1983); *see also Northwestern Memorial Hospital v. Ashcroft*, 362 F.3d 923, 925 (7th Cir. 2004) ("the Illinois privilege does not govern in federal-question suits"). We might be presented with a different question if this lawsuit involved both federal and state law claims, *see Jaffee v. Redmond*, 518 U.S. 1, 15-16 n.15 (1996), but the only state law claim that ever was in the case has been dismissed (see doc. # 24: 02/02/04 Mem. Op. and Order at 2-4).

### III.

Although none of the statutory schemes cited by defendant bars production here, during argument we raised the issue with the parties about whether the documents in issue are protected by a privilege the parties have not addressed: the federal psychotherapist-patient privilege announced in *Jaffee*, which protects "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment." 518 U.S. at 15. This federal privilege applies to confidential communications not only between a patient and psychotherapist, but also the confidential communications with licensed social workers. *Id.* at 15-16.

Of course, this privilege is "rooted in the imperative need for confidence and trust." *Jaffee*, 516 U.S. at 10 (quoting *Trammel v. United States*, 445 U.S. 40, 51 (1980)). Thus, in the absence of a legitimate expectation of confidentiality, there can be no privilege. *Scott v. Edinburgh*, 101 F.Supp. 2d 1017, 1020 (N.D. Ill. 2000). Moreover, even a communication that was confidential and privileged when made may be subject to production if the privilege is later waived. *Jaffee*, 518 U.S. at 14 n.14 ("[l]ike other testimonial privileges, the patient may of course waive the protection").

11

Because the parties have not addressed the federal psychotherapist-patient privilege, we are not in a position to rule on whether particular documents sought by the plaintiff may be withheld on the basis of that privilege. To assist the Court in making that determination, we direct defendant to review the withheld records to determine which ones the defendant legitimately can assert were subject to the psychotherapist-patient privilege when originally created. On that score, we note that it appears certain records plainly would not be subject to such a privilege: for example, those records conveyed to the Department pursuant to the fitness for duty evaluation consent form (*see* Pl. Mem., Ex. 5), which reflects the employee's understanding that his or her conversations with the medical professional were not pursuant to a therapist-client relationship and were not confidential. It also may be that many (if not all) of the documents generated by the Department's medical group did not fall within the *Jaffee* privilege when created, since those records were not created for the purpose of medical treatment but, instead, were for purposes of evaluating the ability of an employee to return to work. On the other hand, records created by outside mental health professionals who treated the employees may have been privileged when created. Defendant is directed to engage in a document-by-document review to determine those documents for which it believes there is a legitimate psychotherapist-patient privilege to assert.

For any such documents, defendant then must consider whether there has been a waiver of any such privilege by the disclosure of the document to the Department. As we have set forth above, the records in issue were received by the Department through different paths. Some were conveyed directly by outside treating physicians pursuant to consent forms that authorized distribution only for a limited purpose, and did not authorize redisclosure without specific written authorization. It appears that, in other situations, records created by outside treaters were conveyed to the Department

directly by the employees, without any consent form that limited the distribution or use of the information. There may be other forms of consent that were used as the means of authorizing distribution of the documents to the Department. In assessing whether a particular record may be subject to a good faith assertion of the psychotherapist-patient privilege, defendant is instructed to consider all of these manners in which the documents were conveyed to the Department to determine whether any privilege has been waived.

Based on the arguments the Court has received in the case, as well as the governing case law, it appears likely that certain records will be produced. In anticipation of that production, the Court further directs that the parties work on a protective order to govern the distribution and use of any records produced. We believe that there is good cause for such a protective order because, even if certain records may not be withheld on the basis of privilege, they are nonetheless sensitive medical records of individuals who are not parties to this lawsuit. In these circumstances, a protective order is appropriate in order to protect these non-parties from the embarrassment of public dissemination of sensitive, personal information. *See* Fed. R. Civ. P. 26(c). Any such protective order should include, at a minimum, the following elements: (a) a provision stating that the medical records produced may be used only for purposes of this lawsuit, and for no other purpose; (b) "an attorneys' eyes only" provision, that bars plaintiff from access to the medical records or the information in them; (c) a methodology for redacting from any of the records used during depositions the names of the individuals whose records are being produced, using in place of their names some alpha-

numeric or other code; and (d) a provision requiring that plaintiff return to defendant (or destroy) all copies of the medical records produced, and retain no copies of them.³

## CONCLLUSION

For the foregoing reasons, plaintiff's motion to compel (doc. # 49) is GRANTED, to the extent that the Court rejects defendant's assertion that production of the requested medical records is barred by HIPAA, the Public Health Act, and/or the Illinois Confidentiality Act. The Court holds in abeyance the issue of what particular records must be produced to plaintiff, pending the review process set forth in this memorandum opinion and order. At the next status confererence (set for January 20, 2005 at 8:30 a.m.), defendant is directed to be prepared to discuss the result of its document review, and the parties are directed to be prepared to discuss the form of protective order that would be appropriate in this case.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: January 7, 2005

---

³In these circumstances, we consider it unlikely that the analysis of what documents should be produced would be affected by a Rule 26(b)(2) analysis. To the extent the documents are privileged, they will not be produced. To the extent they are not privileged (or the privilege has been waived), this is not a situation where there would be an undue administrative burden in producing the documents. Defendant concedes that the documents are not so voluminous that it would be burdensome to locate or produce them. And, if the documents are not privileged, then it is hard to see how the burden on non-parties' confidentiality interests would outweigh the benefit of producing documents that are relevant – and, indeed, are the type of discovery materials concerning "similarly situated" persons that often are central to proving (or disproving) a discrimination claim. The relevance of the information sought here distinguishes this case from *Northwestern Mem. Hosp. v. Ashcroft*, 362 F.3d 923 (7th Cir. 2004), in which the appeals court affirmed an order quashing a subpoena for sensitive non-party medical records where there was no articulated relevance for the information being sought.